**United States District Court**
**Eastern District Of New York**

}
Susan Pieper d/b/a Pet Expressions        }
                        Plaintiff          }
                                           }
                                           }
        v.                                 }
                                           }
                                           }
Benerin, LLC, Smithaven Veterinary Clinic, Inc.,   }
Smithaven Grooming, Ron Coiro, and Does 1-20   }
                                           }
                        Defendants         }
                                           }

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   AUG 10 2012   ★

LONG ISLAND OFFICE

COMPLAINT

NO SUMMONS ISSUED

JURY TRIAL
DEMANDED   SPATT, J.

WALL, M.J.

CV-12 3999

**Nature of the Action**

1.      This action arises out of Defendants' racketeering scheme to defraud Plaintiff by intentionally overcharging for utilities, to defraud the Town of Smithtown by intentionally failing to update property records leading to the underpayment of property taxes, to intimidate Plaintiff to agree to lease terms that are both against public policy and illegal, and to use improper means to attempt to destroy and disrupt Plaintiff business so that one or more Defendants could take over Plaintiff's business.   At all times, Defendants were aware that the charges for utilities not only exceeded Plaintiff's fair share, but led to a windfall by Defendants.   On these and related grounds, Plaintiff asserts claims under the federal racketeering statute, 18 U.S.C. §1962, and New York's Anti-Deceptive Trade Practices Act, N.Y.G.B.L., §349, and seek compensatory, treble and/or punitive damages, together with attorneys' fees and expenses.   Plaintiff also asserts claims for unjust enrichment, conversion, and fraud.

**Jurisdiction**

2.      Jurisdiction is proper under the federal racketeering statute, 18 U.S.C. §1964(c), and the principles of supplementary jurisdiction, 28 U.S.C. §1367.   Defendants conducted a

racketeering scheme affecting interstate commerce, through the use of interstate communication and banking facilities.

## Parties

3.    Plaintiff Susan Pieper is a resident of Central Islip, NY at 1030 Montauk Avenue, Central Islip, NY 11722.

4.    Pet Expressions is the d/b/a of Susan Pieper and is located at 479 Lake Avenue, St. James, NY 11780.

5.    Defendant Benerin, LLC is a New York LLC with its registered offices at 179 Roosevelt Avenue, Hauppauge, NY 11788.

6.    On information and belief, Defendant Benerin is the owner of the property known as 810 Middle Country Road, St. James, NY, 11780 and that Defendant Benerin purchased the property some time in 2004.

7.    Defendant Ron Coiro is a resident of Suffolk County, New York residing at 179 Roosevelt Avenue, Hauppauge, NY 11788.

8.    Defendant Smithaven Veterinary Clinic, Inc. is a New York corporation with its registered offices and principal place of business located at 810 Middle Country Road, St. James NY 11780.

9.    Ron Coiro is and has been at all relevant times the President of Defendant Smithaven Veterinary Clinic, Inc.

10.    Ron Coiro is and has been at all relevant times a member of Defendant Benerin, LLC. Defendant Ron Coiro has represented that he is the President of Defendant Benerin, LLC.

11.   Smithaven Grooming is a business owned, operated, and managed by Defendant Ron Coiro and has its principle place of business located at 810 Middle Country Road, St. James, NY 11780.

12.   Pet Expressions' former location was 810 Middle Country Road, St. James, NY 11780.

**Factual Allegations**

13.   As summarized above, this case involves the systematic and repeated manner in which Defendants defrauded and intimidated Plaintiff by the systematic overcharging for utilities.  During negotiations of a long term lease, Defendants demanded that Plaintiff pay for rent on an unoccupied, illegal apartment.  Defendants further demanded terms that were commercially unreasonable.  Defendants engaged in a pattern of conduct to destroy and or disrupt Plaintiff's business.  Defendants also actively defrauded the Town of Smithtown by misrepresenting the status of Defendants' property so that Defendants' property taxes were less than what should have been owed.

14.   Plaintiff Susan Pieper operated Pet Expressions from 810 Middle Country Road, St. James, NY 11780 ("the Premises") starting in approximately 1991.  The primary business of Pet Expressions was pet grooming services.

15.   The Premises was located on a plot which had two buildings.  The Premises is the front building.  The second building located in the rear of the property was the location of Defendant Smithaven Veterinary Clinic where Defendant Ron Coiro practices as a veterinarian. The Premises was a free standing structure that had originally been a house. On the first floor was Plaintiff's business.  On part of the first floor and the second floor was one apartment.  In the basement was another apartment.

16.   Starting in 1991, the landlord for the Premises was Dr. Clifford Conarck. Plaintiff had a month to month lease with Dr. Conarck for a rent of $500 per month, utilities included. The parties also agreed that should either party terminate the leasehold, the other party would be given commercially reasonable notice.

17.   In mid 2004, following the death of Dr. Conarck, the Premises was purchased by Defendant Benerin, LLC.  In addition to month rent which was ultimately increased to $1,500 per month, Benerin, through its President Ron Coiro, required that Plaintiff pay for a proportionate share of the electric and oil because there were two residential tenants in the same building.  Defendant Coiro represented to Plaintiff that because she operated a business, she was a heavy user of the utilities and was responsible for 65% of the oil and electric bills.

18.   Plaintiff reasonably relied upon the representations of Defendants and paid 65% of the electric and oil when presented with bills by Defendants.

19.   Although the Premises was originally a house, current zoning requirements do not allow the building to be used for residential purposes.  There was a prior use exception so that the building could be used as a residence for the veterinary professional.  At no time during Defendants ownership did Defendant Ron Coiro live in the Premises.

20.   Furthermore, according to records of the Town of Smithtown, there was no record of a second floor being built nor was there a certificate of occupancy for the residential apartments.

21.   In addition, there was a swimming pool between the two buildings which was filled in by one or more Defendants.  No permit was ever obtained to fill in the pool.  On information

and belief, the pool was filled in with various materials other than clean fill including what was once used as a crematorium for the veterinary clinic.

22.    On or about November 1, 2011, Defendant Coiro approached Plaintiff and informed her that her would be increasing the rent some 20%. Furthermore, Coiro demanded that Plaintiff renovate the premises at Plaintiff' expense.

23.    In addition, Defendant Coiro claimed that Plaintiff's use of the premises had caused structural damage to the building for which Plaintiff was responsible. Plaintiff had her builder-expert inspect the alleged damage who concluded that there was no structural damage. At most, there was some water stains which had been present since before Defendant acquired the property.

24.    Starting soon after Defendant Benerin acquired the Premises, Benerin began charging Plaintiff for a portion of the electric and oil. Defendant Coiro instructed Plaintiff that her fair share of the utilities was 65%. At the time, Defendant Coiro knew that Plaintiff's fair share of the utilities was far less than 65%. Plaintiff reasonably relied upon Defendants' representation.

25.    Defendants further told the residential tenants that their combined share was 40% and that Plaintiff would be paying 60%. At a minimum, Defendants were overcharging Plaintiff by 5% of the gross utility costs.

26.    Even 60% of the utilities far exceeds Plaintiff's far share, a fact known to Defendants. Starting in the fall of 2011, the basement tenant in the premises left and the electric bill went down approximately 30%. This suggests that a fairer share of the electric utilities is 40%.

27.   Plaintiff's floor space represents approximately 20% of the available floor space.   As such, a reasonable estimate of her usage is 20% of the oil, especially in light of Plaintiff keeping the thermostat set on 60 degrees throughout the winter.

28.   Plaintiff only learned of Defendants' deception in early 2012 when a comparison between electric bills without one of the tenants to those with all three tenants could be conducted.

29.   Plaintiff vacated the Premises on April 30, 2012. The Premises was left broom clean and in a commercially reasonable manner. There was no agreement written or otherwise that required Plaintiff to undertake any repairs or renovations.

30.   Subsequent to Plaintiff's vacating the property, Defendants undertook renovations of the property so that Defendants could operate a pet grooming shop in the Premises. Defendants did so hoping that customers would become confused and believe they were conducting business with Plaintiff.

31.   On June 12, 2012, Defendant Benerin initiated suit against Plaintiff in the Supreme Court, State of New York, County of Suffolk. This suit demanded payment for utilities in excess of Plaintiff's proportionate use. Defendant Benerin was fully aware that these amounts exceed Plaintiff's proportionate use.

32.   Defendant Benerin also claimed additional damages for repairs to the Premises which were not the responsibility of Plaintiff in a further attempt to damage and/or destroy Plaintiff's business. These renovations were undertaken by Defendants so that they could operate their own grooming shop and were

33.   Because of the proximity of Defendants and Plaintiff's business prior to Plaintiff moving, many customers were shared between the parties. Prior to opening their grooming shop,

Defendants were telling Plaintiff's customers that she would be going out of business as part of the overall scheme to damage and/or destroy Plaintiff's business.

34.   On July 5, 2012 Defendants began operating a grooming shop at the former Pet Expressions location under the name Smithaven Grooming.

## COUNT I
### (RICO, 18 U.S.C. §1962(c))

35.   Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

36.   Plaintiff, a resident of the state of New York, purchased goods from outside the state of New York from time to time in the regular conduct of business as well as for personal use. As a result of Defendants' actions, Plaintiff had less available funds in which to make out of state purchases. As a result of having less available funds, Plaintiff actually spent less money outside the State of New York. Therefore, Defendants' conduct and activities affected interstate commerce.

37.   The association of Defendants and others whose identities are known only to Defendants at this time (cumulatively, the "Conspirators"), constituted an enterprise within the meaning of 18 U.S.C. §1961(c), which enterprise was engaged in, and whose activities affected, interstate commerce. This enterprise was continuous in that it lasted for more than two years, had an ascertainable structure, and was distinct from the predicate offenses alleged here.

38.   Each Defendant is a person within the meaning of 18 U.S.C. §1961(3) and separate from the enterprise.

7

39.     Defendant Coiro, the President of Defendant Smithaven Veterinary Clinic and a member of Defendant Benerin, was in charge of all operations of both entities. As such, he set up, orchestrated, and supervised the entire racketeering scheme at issue.

40.     Defendants' scienter is clearly established from their pattern and practices at issue.

41.     Defendants participated, and conspired with others whose identities are known only to Defendants at this time to participate, in the affairs of the aforementioned enterprise through a pattern of racketeering activity, as more fully set forth below, an all in violation of 18 U.S.C. § 1962(c).

Mail Fraud, Violations of 18 U.S.C. §1341

42.     Defendants and the other members of the enterprise, having devised or intending to devise the scheme or artifice to defraud, and/or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting so to do, placed in post office(s) or authorized depository for mail matter, several letters and/or packages to be sent or delivered by the Postal Service, and/or took or received there from, letters and/or packages, or knowingly caused to be delivered by mail or such carrier according to the direction thereon, or at the place at which it was directed to be delivered by the addressee such letters and/or packages. Specifically,

   i.   On or about February 14, 2012, Defendants, through the use of the United States Postal Service, mailed a letter to Ms. Pieper;

   ii.  On or about February 15, 2012, Defendants, through the use of the United States Postal Service, mailed a letter to Ms. Pieper.

43. These letters informed Plaintiff that her lease was being terminated as of March 31, 2012 and were part of Defendants' overall scheme to disrupt and destroy Plaintiff's business.

44. The Conspirators willfully and with intent to improperly destroy and disrupt Plaintiff's business, made extortionate demands of Plaintiff and ultimately terminated Plaintiff's lease. This termination was in retaliation for Plaintiff's refusal to agree to pay for rent in an unoccupied, illegal apartment as well as for improvements to the property. Immediately after the property was vacated by Plaintiff, Defendants implemented previously developed plans to renovate the property and open a competing grooming business. Conspirators were aware that the apartment was illegal and that conspirators had been defrauding the Town of Smithtown by not obtaining the proper permits and paying the appropriate property taxes. Conspirators made material misrepresentations to the Town of Smithtown by leading the Town to believe that the building occupied by Plaintiff was a one story residence occupied by the proprietor of Smithaven Veterinary Hospital as a primary residence. In fact, the building had been expanded to two stories and subdivided into three spaces- that occupied by the Plaintiff and two illegal apartments.

45. The material misrepresentations were made by Conspirators to the Town of Smithtown. Terminating Plaintiff's lease was an attempt to replace Plaintiff with another tenant who would agree to Defendants' illegal lease terms and to continue to defraud the Town of Smithtown in furtherance of the overall scheme of the Conspirators.

46. The Town of Smithtown relied upon Defendants' misrepresentations concerning the status of the property and such reliance was reasonable.

47. Each participant knew, expected, reasonably foresaw, and intended that the facilities of interstate mail would be used in furtherance of the racketeering scheme, and that such use was an essential part of the scheme.

<u>Wire Fraud, Violations of 18 U.S.C. §1343</u>

48. On a monthly basis since 2004, Conspirators knowingly overcharged Plaintiff for utilities.

49. Because of Conspirators illegal subdivision of the building, Conspirators never installed proper utility meters nor separate hot water or oil tanks. As such, it is impossible to determine Plaintiff true usage of the utilities. Conspirators, knowing this and in an attempt to make the illegal apartments more attractive, claimed that 65% of the utilities represented a fair estimate of Plaintiff's usage. Recently due to the vacancy of one of the apartments, Plaintiff has been able to determine that this amount was a gross exaggeration.

50. First, Plaintiff only used approximately 1/5th of the floor space of the building. Routinely and regularly, Plaintiff kept the heat set at 60 degrees to minimize the costs of heat. Furthermore, Plaintiff's shop is closed at night. As such, a fair estimate of the usage of oil for heat is approximately 1/5 or 20% of the bill, far less than 65%.

51. With respect to electricity, Plaintiff was able to determine that with the absence of the basement tenant, the electric usage went down by some 30%. Assuming that the usage of the two apartments is comparable, that yields approximately 60% usage for the two apartments and therefore, 40% for Plaintiff.

52. Aside from whether 65% represented a fair portion of the usage, Conspirators consistently told the apartment tenants that Plaintiff portion of the utilities was 60% and

collecting 20% from each of the two tenants.  Thus it is clear that at a minimum, Plaintiff was overcharged 5% of the gross amount of the utilities on a monthly basis.

53.   At all relevant times, Conspirators were aware that 65% far exceeded Plaintiff's likely usage.  Conspirators also knew that they were at a minimum overcharging Plaintiff by 5% of the gross amount of the utilities.  With knowledge of its falsity, Conspirators represented to Plaintiff that 65% was in fact a fair estimate of usage.  Plaintiff relied upon such representations by Conspirators and paid 65% of utility bills submitted by Conspirators.

54.   Each month for approximately seven years, Plaintiff paid Defendant Benerin, LLC with a check drawn upon Chase Bank (formerly Washington Mutual Bank).  Defendant Benerin, LLC deposited these checks causing funds to be debited from Plaintiff's checking account.

55.   Chase Bank and Washington Mutual Bank were federally chartered banks engaged in the business of interstate banking.  By depositing each check, Defendants conduct used the interstate banking system.

56.   These funds were deposited in furtherance of Conspirators' scheme to defraud Plaintiff. Therefore, each deposit by Benerin, LLC deposited a check including funds for utilities paid by Plaintiff constitutes an act of wire fraud in violation of 18 U.S.C. §1343

Extortion Under The Hobbs Act, 18 U.S.C. §1951

57.   Defendants implemented a practice and pattern of threats and intimidation to force Plaintiff to agree to lease terms that required Plaintiff to pay for illegal apartments and to act in a commercially unreasonable manner.   Defendants sought to extract as much money as possible from Plaintiff in an attempt to disrupt and or destroy Plaintiff's business.   Furthermore, Defendants planned to push Plaintiff out of its existing space so that it could take over Plaintiff's business.   Immediately after the property was vacated by Plaintiff, Defendants took steps to open a competitive grooming business.

58.   On multiple occasions Defendant Ron Coiro threatened Plaintiff that he would shut off Plaintiff utilities if Plaintiff did not agree to his lease terms.   Coiro had no right to do so under the law and such a disruption would have been a criminal violation under NY RPL § 235(1).

59.   Defendant Coiro also demanded that Plaintiff use his contractor to perform the renovations in her space.   This was the same contractor who was performing renovations to the illegal basement apartment.   Coiro's contractor wanted to charge some 30% more than estimates obtained by Plaintiff for the same work.   It is clear that the insistence on using his contractor was Coiro's attempt to force Plaintiff to pay part of the costs of renovations to the illegal basement apartment.

60.   Defendants knew, and should have known, that the above representations were false when made.

61.   Thereby, Defendants used wrongful means for a wrongful objective, with intent to obtain that which in justice and equity Defendants were not entitled to, and knew that they were not entitled to, receive.

12

62.   Defendants affected interstate commerce by extortion and/or attempted or conspired so to do.

63.   Defendants attempted to extort property from Plaintiff.  When Plaintiff failed to accede to Defendants' illegal demands and threats, Defendants evicted Plaintiff causing Plaintiff to suffer considerable expenses to move Plaintiff's business.

<u>Extortion under New York Law</u>

64.   Plaintiff incorporates the aforesaid allegations herein by reference.

65.   Defendants intended to deprive Plaintiff of property or to appropriate the same to themselves.  They wrongfully took or obtained, or attempted to take or obtain, such property from each Plaintiff.

66.   Defendants wrongfully attempted to take such property by compelling or inducing Plaintiff and other persons to deliver such property to Defendants.  They did so by attempting to induce a fear that, if the property was not so delivered, Defendants would cause damage to Plaintiff's property, or engage in other conduct constituting a crime, or testify or provide false information with respect to Defendants' legal claims.

67.   Thereby, Defendants committed the offense of extortion under New York's Extortion Act, N.Y. Penal Law, §155.05.

68.   Defendants' extortions are chargeable under New York law and punishable by imprisonment for more than one year.  As such, they constitute predicate racketeering acts under 18 U.S.C. §1961.

Pattern of Racketeering Activity

69.    The aforesaid acts had the same or similar purposes, results, participants, victims, and/or methods of commission, and were otherwise interrelated by distinguishing characteristics and were not isolated events.   The pattern of racketeering activity engaged in by Defendants consisted of a scheme executed by the aforementioned conspirators from no later than 2004, and continuing to date, to extort and collect unwarranted sums through knowingly and systematically overcharging of Plaintiff, trying to force Plaintiff to pay sums of money for an illegal apartment not used by Plaintiff, and to defraud the Town of Smithtown of tax and other revenue for permits.    That pattern included multiple predicate acts of extortion.

70.    The racketeering acts identified hereinabove were related to one another and formed a pattern of racketeering activity in that they were in furtherance of a common goal, including the goal of profiting illegally by defrauding Plaintiff and the Town of Smithtown.

71.    The acts of racketeering activity extended over a substantial period of time from 2004, and continue to this day.   They were sufficiently continuous to form a pattern of racketeering activity.

72.    Defendants participated in the scheme through themselves, and, in the case of Benerin, LLC Smithaven Veterinary Clinic, Inc., and Smithaven Grooming, their representatives, salesmen, employees and officers, and others whose identities are known only to Defendants at this time. Defendants benefitted enormously by the profits they made from the scheme, and the various amounts collected unlawfully.   The Conspirators knew, enabled, and actively participated in the racketeering scheme.

**14**

73.     Defendants engaged in a pattern of racketeering activity consisting of extortion.  The
predicate acts occurred over a period of well over 7 years.  Defendants received income
from these patterns in the form of unwarranted payments.  Defendants disbursed these
funds amongst themselves in a manner known only to them.

74.     Each Defendants' participation was critical to the racketeering scheme. They enabled,
conducted, maintained, aided, and abetted the racketeering scheme by:

  i.  Drafting and preparing letters,  and other documents;

  ii.  Supervising, conducting, and monitoring the conduct of the fraudulent
      scheme;

  iii.  Concealing the scheme or, alternatively, consciously avoiding discovery
      of the scheme;

  iv.  Encouraging third parties to participate in the racketeering scheme;

  v.  Willfully violating, or being recklessly indifferent to, mandatory
      requirements of federal law and procedure concerning racketeering;

75.     The precise role played by each Defendant is known only to Defendants at this time.
Such information, and evidence concerning their participation, is exclusively within the
possession and knowledge of Defendants.

76.     Plaintiff has been injured in their business or property by reason of Defendants' violation
of 18 U.S.C. §1962(c).  As a direct and proximate result of these violations, Plaintiff has
been injured in that, inter alia, it paid sums of money to Defendants that were not
properly owed.

15

77.   By reason of this violation of 18 U.S.C. §1964(c), Plaintiff is entitled to recover from Defendants three times her damages plus pre- and post- judgment interest, costs and attorneys' fees.

**COUNT II**
(Violation of 18 U.S.C. § 1962(d))

78.   Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

79.   In violation of 18 U.S.C. § 1962(d), Defendants and others whose identities are known only to Defendants at this time conspired to violate the provisions of 18 U.S.C. §1962(c) in that, beginning no later than 2004 and continuing through today, they knowingly agreed and conspired to conduct or participate, directly or indirectly, in the affairs of an enterprise through the pattern of racketeering activity described above. The volume and frequency of the transactions, and the continuance of the scheme at issue for over 7 years, could not have occurred without the consent and knowing connivance of Defendants and other Conspirators.

80.   As part of and in furtherance of their conspiracy, each Defendant agreed to and conspired in the commission of the many predicate acts described above, with the knowledge that they were in furtherance of that pattern of racketeering activity. As part of and in furtherance of their conspiracy, each Defendant agreed to and did commit at least two predicate acts of racketeering. Further, each Defendant's actions are attributable to the other Defendants.

81.   None of the Defendants have withdrawn, or otherwise dissociated themselves from the conspiracy at issue or the other Conspirators.

16

82. Plaintiff has been injured in business or property by reason of Defendants' violations of 18 U.S.C. S 1962(d).

83. As a direct and proximate result of each Defendant's violations, Plaintiff has been injured as aforesaid.

84. By reason of Defendants' violation of 18 U.S.C. §1964(d), Plaintiff is entitled to three times her damages plus interest, costs and attorneys' fees.

**COUNT III**
(N.Y. General Business Law Article 22-A)

85. Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

86. Because of the conduct of Defendants, Plaintiff had less available funds to make purchases of other business both within the State of New York and elsewhere.

87. Because of the conduct of Defendants, Plaintiff kept the temperature of its premises set very low during the winter in order to save money. The low temperature in the premises caused severe discomfort for Plaintiff and Plaintiff's customers.

88. In addition, Defendants failed to properly report the status of the property to the Town of Smithtown, collected rents for illegal apartments, and failed to pay appropriate property taxes.

89. Furthermore, on at least one occasion Defendant Coiro represented to one of Plaintiff's customers that Plaintiff would be going out of business. Such statement was untrue and was designed to deceive the public who had been engaging in the services of Plaintiff for years. The conduct was further designed to improperly direct business to Defendants.

90.     On July 21, 2012, Defendants misrepresented to a Pet Expressions customer, Lance
        Sinatra, that Sinatra was conducting business with Pet Expressions.  Mr. Sinatra had an
        appointment for his dog Bianca scheduled with Pet Expressions for July 21, 2012.  On
        July 20, 2012, Plaintiff Susan Pieper confirmed the appointment with Mr. Sinatra.
        Inadvertently, Mr. Sinatra went to Pet Expressions old location, 810 Middle Country
        Road, the current location for Smithaven Grooming, believing that to be the current
        location.  Mr. Sinatra entered the premises and stated he had a 10:00 am appointment.
        With full knowledge that Mr. Sinatra did not have an appointment and with full
        knowledge that Mr. Sinatra had gone to the wrong location, Defendant Smithaven
        Grooming took the dog intending Mr. Sinatra to believe he was conducting business with
        Pet Expressions.

91.     Defendants committed deceptive acts or practices in the conduct of business in New
        York.  Their conduct was unlawful and of a recurring nature, and strongly affected the
        public interest.  By its conduct aforesaid, Defendants violated Article 22-A (Section 349)
        of New York's General Business Law.

92.     Plaintiff sustained damages due to the Defendants' violations.  Accordingly, under
        Section 349(h) of New York's General Business Law, Plaintiff is entitled to recover
        compensatory and treble damages and reasonable attorneys' fees and expenses.  In
        addition, Plaintiff is also entitled to an injunction against Defendants preventing them
        from continuing the aforesaid deceptive practices.

**Count IV**
(Unjust Enrichment)

93.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

94.     Defendants were entitled to charge Plaintiff for her proportionate share of electric and oil. Defendants' representation of Plaintiff's proportionate share of electric and oil systematically and continuously overstated her proportionate use.

95.     As a result, Plaintiff paid to Defendants and amount greater than supported by her proportionate use.   Defendants were not entitled to these additional funds.   This additional amount unfairly and unjustly enriched the Defendants' account.

96.     It is estimated that Plaintiff was overcharged by at least $50,000.

97.     Therefore, Plaintiff is entitled to the recovery of the amount overcharged, the amount of which is to be proved at trial.

**Count V**
(Conversion)

98.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

99.     Plaintiff paid Defendant Benerin various amounts for electric and gas during the time period of 2004 to 2012.  Plaintiff paid Defendant Benerin by check.  Before tendering the check, Plaintiff was in lawful possession of the funds in her accounts.

100.    Defendants knowingly overcharged Plaintiff for the appropriate share of electric and oil.

101.    Defendants accepted Plaintiff's check knowing that the check included amounts for which they were not entitled to.

102.  Defendants deposited the check tendered by Plaintiff and took permanent possession of the funds, depriving Plaintiff of those funds.

103.  Because Defendants improperly took permanent possession of funds that rightfully belonged to Plaintiff, Defendants converted said funds in an amount estimated to be at least $50,000.

104.  Therefore, Plaintiff is entitled to the return of funds converted by Defendants in an amount to be determined at trial, estimated to be at least $50,000.

### Count VI
(Fraud)

105.  Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

106.  At all times, Defendant Coiro represented to Plaintiff that she would pay a proportionate share of the electric and oil. From 2004 through the termination of Plaintiff's leasehold, Plaintiff paid more than her proportionate share of the utilities.

107.  Such representation was knowingly false as Defendant Coiro was collecting more than 100% of the utilities. He represented to the two other tenants in Defendants building that they would be paying 20% of the utilities each and that Plaintiff would be paying 60% of the utilities. Defendant Coiro charged Plaintiff 65% of the utilities which represented more than the 60% that he represented to others he was charging Plaintiff.

108.  Furthermore, Defendant Coiro was aware that Plaintiff was paying more than her proportionate share of the utilities. Defendant represented to Plaintiff that because she was a business, she used far more utilities than the combined residents of Defendant's building. Defendant knew that this was untrue and benefitted because Plaintiff was in

effect subsidizing a substantial portion of the other residents' fair utility costs, lowering net rent to Defendants' other tenants. Plaintiff's floor space represented approximately 20% of the premises, yet she was charged 65% of the utilities.

109. Defendant Coiro intentionally deceived Plaintiff so that he could collect funds he was not otherwise entitled to and so that he could lower the net rent to other tenants making their tenancy more attractive.

110. Plaintiff reasonably relied upon the representations of Defendant and paid Defendant for utilities as requested.

111. By paying the utilities as requested by Defendant, Plaintiff overpaid her proportionate share of the utilities and was damaged to the extent of the overpayments.

112. Therefore, because Defendants knowingly and intentionally misrepresented Plaintiff proportionate share of the utilities which was reasonable relied upon by Plaintiff and for which she overpaid Defendants, Defendants has defrauded Plaintiff of the overpayments in an amount estimated to be at least $50,000.

113. As such, Plaintiff is entitled to recover the overpayments in an amount of at least $50,000, the amount of which is to be proved at trial.

**JURY DEMAND**

114. Plaintiff demands trial by Jury.

**WHEREFORE**, Plaintiff demands judgment against Defendants on each Count aforesaid:

a.   awarding compensatory, punitive, and/or treble damages to Plaintiff in such

amount, not less than $50,000, as may be determined after discovery and trial;

b.   awarding Plaintiff the costs of this action, including reasonable attorneys' fees and

expenses, experts' fees and other disbursements; and

c.   for such further and other reliefs as may be just and proper.

Dated:  July 26, 2012                                    **George Kehm, Esq.**

By:  George Kehm, Esq.
696 Broadway
Massapequa, NY 11758
516-795-3434

Keith Altman
Law Office of Keith Altman
32250 Calle Avella
Temecula, CA 92592
516-456-5885
kaltman@lawampmmt.com
(Licensed in CA Only. Pro Hac Vice
Application Pending)

Attorneys for Plaintiff