FILED
CLERK
8/22/2013 12:53 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
SUSAN PIEPER d/b/a PET EXPRESSIONS,

                Plaintiff,

      -against-

BENERIN, LLC, SMITHAVEN VETERINARY
HOSPITAL, P.C., SMITHAVEN GROOMING,
RONALD COIRO and Does 1-20,

                Defendants.
----------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
12-CV-3999 (ADS)(AKT)

**APPEARANCES:**

**The Law Office of Keith Altman**
*Attorney for the Plaintiff*
32250 Calle Avella
Temecula, CA 92592
      By:    Keith Altman, Esq., of Counsel

**Campolo, Middleton, & McCormick, LLP**
*Attorneys for the Defendants*
3340 Veterans Memorial Highway
Suite 400
Bohemia, New York 11716
      By:    Patrick McCormick, Esq.
                 Jeffrey V. Basso, Esq., of Counsel

**SPATT, District Judge.**

      On August 10, 2012, the Plaintiff Susan Pieper d/b/a Pet Expressions (the "Plaintiff" or "Pieper") commenced this action alleging a racketeering scheme and conspiracy to commit racketeering under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 <u>et seq.</u> ("RICO"). In this regard, the Plaintiff alleges that the Defendant Ron Coiro ("Coiro") through the use of and in cahoots with the Defendants Benerin, LLC ("Benerin"), Smithaven Veterinary Clinic, Inc. ("Smithaven Vet") and Smithaven Grooming (collectively, the "Defendants"), devised and implemented a scheme involving the mail and wires to

1

(1) overcharge the Plaintiff for utilities; (2) disrupt and destroy the Plaintiff's business and; (3) defraud the Town of Smithtown (the "Town" or "Smithtown").  In addition, the Plaintiff brings state law claims for misrepresentation under New York law, common law unjust enrichment, conversion and fraud.

Presently before the court is the Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) for failure to state a claim upon which relief can be granted.  For the reasons that follow, the Court finds that the Plaintiff has failed to state a claim under RICO.  Therefore, the Court grants the Defendant's motion to dismiss the Plaintiff's RICO claims with prejudice.  The Court also declines to exercise supplemental jurisdiction over the Plaintiff's state law claims and dismisses them without prejudice.

## I. BACKGROUND

Unless otherwise stated, the following facts are derived from the Plaintiff's amended complaint and construed in the light most favorable to the Plaintiff.

The Defendant Benerin owns the property and buildings located at 810 Middle Country Road in the town of St. James, New York ("810 Middle Country Road" or the "Property").  810 Middle Country Road houses two buildings, a front building and a rear building.  The front building is divided into three units.  In this regard, Benerin rented two of those units to residential tenants.  The third unit (the "Premises") was rented to the Plaintiff for operation of her pet grooming services business, which she called Pet Expressions.  The Plaintiff leased the Premises from Benerin from some unspecified time in mid-2004 until April 30, 2012.

The Defendant Smithaven Vet is a veterinary services business that operates out of the rear building at 810 Middle Country Road.  The Defendant Smithaven Grooming is a pet grooming services business that began operating from the Premises after Pet Expressions vacated

2

the Premises. The Defendant Coiro is the sole owner and in charge of all operations of Benerin, Smithaven Grooming and Smithaven Vet.

With respect to the Plaintiff's leasing of the Premises, the Plaintiff's lease was a month-to-month tenancy under which she paid rent of $1,500 per month. She was also responsible for a proportionate share of the utility bills for the building. On behalf of Benerin, Coiro calculated the Plaintiff's proportionate share as 65% of the total utility bills. In this regard, Corio reasoned that the Plaintiff's business used significantly more utilities than the other two residential occupants of the building. The Plaintiff reasonably relied on Coiro's representations as to the utility charges.

However, the Plaintiff alleges that Coiro knew that 65% was an exaggerated estimate of the Plaintiff's use of the buildings utilities. According to the Plaintiff, the Defendants charged the other two residents for a total of 40% of the utility bills and therefore netted a 5% surplus from tenant utility payments, which it kept for its own profit. The Plaintiff further contends that after the basement apartment at the front building was vacated, the building's total utility bill went down 30%. This led the Plaintiff to conclude, assuming the utility usage of the two apartments was comparable, that the two apartments on the property cumulatively used approximately 60% of the utilities, which would mean that the Plaintiff's proportionate share was actually only 40% and certainly not 65% of the total bill.

On November 1, 2011, Corio informed the Plaintiff that her rent would be increasing about 20%. He also demanded that the Plaintiff renovate the Premises using Benerin's preferred contractor and undertake repairs of structural damage. The Plaintiff alleges that there was no structural damage and that Benerin's contractor would have overcharged the Plaintiff in order to subsidize other work the contractor was doing for Coiro. She further alleges that on two

occasions, January 16, 2012 and February 5, 2012, Coiro threatened to turn off all utilities at the Premises unless the Plaintiff agreed to the new lease terms.

On February 14, 2012, Benerin sent a notice of termination through the United States Postal Service to Pet Expressions terminating the Plaintiff's lease as of March 31, 2012. On March 3, 2012, the Plaintiff sent a letter to the Defendants in which she outlined her complaints concerning overcharges and the other events forming the basis of the present action. She received no response from the Defendants.

Thereafter, on March 28, 2012, prior to the March 31, 2012 deadline, the Plaintiff filed for declaratory relief against termination in the New York State Supreme Court, County of Suffolk, claiming lack of an adequate notice of termination. Five days later, on April 2, 2012, Benerin instituted holdover proceedings against the Plaintiff in Suffolk County District Court and caused a copy of that proceeding to be mailed to the Plaintiff through the United States Postal Service.

On April 10, 2012, Benerin and the Plaintiff entered into a stipulated settlement pursuant to which the Plaintiff vacated the Premises on April 30, 2012. The Plaintiff claims she left the Premises in a commercially reasonable manner. Subsequently, the Defendants repaired and renovated the Premises. On May 10, 2012, Benerin sent a letter to the Plaintiff concerning the damages to the Premises and alleged that the Plaintiff was responsible. On June 12, 2012, Benerin sued the Plaintiff in New York State Supreme Court, County of Suffolk, for utility payments in arrears and for the cost of repairs Benerin performed on the Premises after the Plantiff vacated it.

On July 5, 2012, The Defendant Smithaven Grooming began operating pet grooming services from the Premises. The Plaintiff alleges that both prior to April 30, 2012 and after that

4

date, the Defendants Smithaven Vet and Smithaven Grooming made representations to their customers and the public that Pet Expressions was going out of business and, on other occasions, that Smithaven Grooming was Pet Expressions.

The Plaintiff contends that the above actions by the Defendants were done in furtherance of a premeditated scheme to disrupt and destroy the Plaintiff's business. This scheme included overcharging the Plaintiff for utilities and demanding that the Plaintiff agree to unfavorable lease terms.

The Plaintiff also alleges a series of illegal acts committed by the Defendants that are unrelated to the Plaintiff. First, she alleges that Benerin illegally rented apartments at the Property for residential use without the appropriate permit to do so. She also alleges that the front building at the Property contains an added second floor even though the Town was never notified of its construction. As such, she claims that the property's tax bill was consistently underestimated and, as a result, that Benerin's property taxes were underpaid. Finally, she alleges that there was a swimming pool between the two buildings on the Property which Coiro filled in without a permit and without using clean fill.

According to the Plaintiff, the above incidents form the basis of a racketeering scheme under RICO. In this regard, the Plaintiff charges that the Defendants engaged in illegal activity by overcharging the Plaintiff for utilities, operating illegal apartments and underpaying property taxes. Allegedly, this illegal activity involved the use of the mail and banking system and thereby amounted to mail and wire fraud. The Plaintiff further contends that Coiro's demands made on behalf of Benerin about the time of negotiations for the new lease terms in 2011 were unreasonable; amounted to threats and intimidation; and are therefore chargeable under 18 U.S.C. § 1951 and New York law as extortion, which is a predicate RICO act.

5

In addition, the Plaintiff brings four claims under New York law. The Plaintiff's first state law cause of action is a charge under N.Y. General Business Law Article 22-A based on the misrepresentations of the Defendants Smithaven Vet and Smithaven Grooming regarding the businesses of the Plaintiff and Smithaven Grooming. Second, the Plaintiff brings a claim for unjust enrichment based on Benerin allegedly taking a disproportionate share of the utility bills from the Plaintiff. Third, the Plaintiff asserts a cause of action for conversion against Benerin and Coiro also based on the alleged utility overcharges. Finally, the Plaintiff claims damages for fraud based on the same alleged utility bill misrepresentations by Benerin and Coiro.

## II. DISCUSSION

### A. The Legal Standard under Fed. R. Civ. P. 12(b)(6) and 9(b)

It is well-established that a complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In this regard, when deciding a motion to dismiss, a court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007). As such, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679.

However, "although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Harris

v. Mills, 572 F.3d 66, 72 (2d Cir.2009) (quoting Iqbal, 556 U.S. at 678). In addition, the Court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in [a] plaintiff['s] possession or of which [the] plaintiff[ ] had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Karmilowicz v. Hartford Fin. Servs. Grp., 494 F. App'x 153, 156 (2d Cir. 2012).

Furthermore, it is well-settled that a complaint alleging fraud must comply with the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires that "the circumstances constituting fraud . . . be stated with particularity." See Ganino v. Citizens Utils., 228 F.3d 154, 168 (2d Cir. 2000). Therefore, in RICO pleadings, "all allegations of fraudulent predicate acts[] are [also] subject to the heightened pleading requirements of [Fed. R. Civ. P.] 9(b)." First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 178 (2d Cir. 2004). "To satisfy this requirement, a complaint must 'specify the time, place, speaker, and content of the alleged misrepresentations,' 'explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[s] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 359 (2d Cir. 2012) (quoting Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001)); see also Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir.2006). The complaint must also "provide some minimal factual basis" that gives rise to a strong inference of fraudulent intent. Powers v. British Vita, P.L.C., 57 F.3d 176, 184 (2d Cir. 1995).

**B. The Legal Standard Under 18 U.S.C. § 1962(c)**

Under the substantive RICO statute, 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to

7

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." To establish a civil RICO violation under 18 U.S.C. § 1962(c), a plaintiff must show "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983); see also Zavalidroga v. Cote, 395 F. App'x 737, 740–41 (2d Cir. 2010).

"For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent common course of conduct and work together to achieve such purposes." First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004); see also 18 U.S.C. § 1961(1)(B). "'Racketeering activity' is broadly defined to encompass a variety of state and federal offenses including, inter alia, murder, kidnapping, gambling, arson, robbery, bribery and extortion." De Falco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001). "Pattern of racketeering activity" is defined as "at least two acts of racketeering activity . . . within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). "The compensable 'injury' is 'the harm caused by predicate acts sufficiently related to constitute a pattern.'" Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc., 10–CV–1762 (RER), 2013 WL 168079, at *5 (E.D.N.Y. Jan. 16, 2013) (quoting Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 497, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)).

Further, the Supreme Court has held that "to conduct or participate, directly or indirectly, in the conduct" of an enterprise "one must participate in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 185, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993). In the Second Circuit, the "'operation or management' test typically has proven to

8

be a relatively low hurdle for plaintiffs to clear . . . especially at the pleading stage." First Capital, 385 F.3d at 176 (2d Cir. 2004) (citing Baisch v. Gallina, 346 F.3d 366, 377 (2d Cir. 2003), and De Falco v. Bernas, 244 F.3d 286, 309 (2d Cir. 2001)). However, in order to clear this hurdle, a plaintiff must show that the RICO defendants played "some part in directing [the enterprise's] affairs." Id. (quoting De Falco, 244 F.3d at 310).

A civil remedy, including treble damages and attorney fees, is provided for any person injured by reason of a RICO violation. 18 U.S.C. § 1964. This civil remedy was included in the RICO statute to "encourag[e] and enlist[] the civil litigation services of the 'private attorneys general' . . . aiding public law enforcement." Gross v. Waywell, 628 F. Supp. 2d 475, 481 (S.D.N.Y. 2009) (quoting Agency Holdg. Corp. v. Malley-Duff & Assocs., 483 U.S. 143, 151, 107 S. Ct. 2759, 97 L. Ed. 2d 121(1987)).

### C. As to Whether the Plaintiff has Stated a Plausible RICO Claim

At the outset, the Court finds that the Plaintiff lacks standing to make claims of predicate acts committed by the Defendants against the Town of Smithtown. "The RICO civil liability provision confers standing on 'any person injured in his business or property by reason of a violation of [18 U.S.C.] section 1962.'" Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 23 (2d Cir. 1990) (citing 18 U.S.C. § 1964(c)). "Thus, in order to have standing, a Plaintiff must show: (1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation." Id. "The compensable 'injury' is 'the harm caused by predicate acts sufficiently related to constitute a pattern.'" Wells Fargo Bank, N.A. v. Nat'l Gasoline, No. 10–CV–1762 (RER), 2013 WL 168079, at *5 (E.D.N.Y. Jan. 16, 2013) (quoting Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 497, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)).

9

In this case, the predicate acts allegedly committed by the Defendants against the Town of Smithtown did not cause any harm to the Plaintiff. Therefore, the Plaintiff is not entitled to raise these predicate acts in a suit for damages. Accordingly, the Court dismisses the Plaintiff's RICO cause of action with regard to the predicate acts committed against the Town of Smithtown or any other third party.

The Court will now consider separately the claims against each Defendant. See Davidson v. Bartholome, 460 F. Supp. 2d 436, 445 (S.D.N.Y. 2006) ("[T]he Court will . . . analyze the circumstances of each defendant separately and pass on the merit of the various claims."); Zito v. Leasecomm Corp., No. 02 Civ. 8074(GEL), 2004 WL 2211650, at *18 (S.D.N.Y. Sept. 30, 2004) ("Because plaintiffs have sufficiently pled each of the elements necessary to state a claim under RICO § 1962(c) against each of the defendants so charged, defendant's motion to dismiss on these grounds will be denied."). See also Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1411 (3d Cir. 1991) ("We will consider separately the allegations against each individual defendant under § 1962(c).").

**1. As to the Allegations against the Defendants Smithaven Vet and Smithaven Grooming**

According to the Plaintiff, the Defendants Smithaven Vet and Smithaven Grooming were complicit in the scheme to overcharge the Plaintiff for utilities and disrupt and destroy the Plaintiff's business. However, the Court finds that the claims against these Defendants are insufficiently pled to state a civil RICO claim for relief. This is because the Plaintiff's claims consist only of vague and unspecific allegations of complicity in a larger scheme to defraud and destroy the Plaintiff's business.

For example, in Paragraph 53 of the Plaintiff's Amended Complaint, the Plaintiff alleges that each Defendant played a role in the racketeering scheme underlying its first RICO cause of

10

action. Defendant Smithaven Vet's role is described as "profit[ing] from below market rent and expenses because Benerin was being subsidized by the illegal conduct." (Compl., ¶ 53.) Defendant Smithaven Grooming's role is described as "step[ping] in once Defendants Benerin and Coiro disrupted Plaintiff's business." (Compl. ¶ 53.) The Plaintiff repeats these roles for Smithaven Vet and Smithaven Grooming in her second count, Conspiracy to Commit Racketeering. (Compl. ¶ 101.) However, the Plaintiff does not back up these assertions with any facts with respect to Smithaven Vet's and Smithaven Grooming's participation in the alleged scheme to overcharge the Plaintiff for utilities and disrupt and destroy the Plaintiff's business. Nor does the Plaintiff allege any set of facts that show plausible violations of mail fraud, wire fraud, extortion or conspiracy with respect to the Defendants Smithaven Vet and Smithaven Grooming.

Pleadings in general must be supported by more than conclusory allegations. Mills, 572 F.3d at 72 (quoting Iqbal, 556 U.S. at 678). As stated above, they must allege enough facts to make the claim for relief plausible on its face. See Twombly, 550 U.S. at 570. Moreover, RICO pleadings alleging fraudulent behavior must be pled with specificity sufficient to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). See Ganino, 228 F.3d at 168. The Plaintiff's allegations of complicity and charges of conspiracy against Smithaven Vet and Smithaven Grooming are void of any specificity and are too vague and unspecific to make the allegations plausible and thereby pass muster on a 12(b)(6) motion to dismiss. As such, the Defendants' 12(b)(6) motion to dismiss the RICO charges is granted with regard to the Defendants Smithaven Grooming and Smithaven Vet.

11

**2. As to the Allegations against the Defendants Benerin and Coiro**

With respect to the Plaintiff's RICO claims against the Defendants Benerin and Coiro, the Plaintiff alleges that Benerin and Coiro committed the following predicate criminal acts: (1) mail fraud in violation of 18 U.S.C. § 1341; (2) wire fraud in violation of 18 U.S.C. § 1343; and (3) extortion in violation of 18 U.S.C. § 1951 and New York law. As explained above, the heightened pleading requirements of Fed. R. Civ. P. 9(b) require that the Plaintiff's allegations of fraud include with specificity the time, place, speaker and content of the alleged misrepresentations. See Cohen, 711 F.3d at 359. In addition, predicate acts must form a pattern of racketeering activity in order to serve as the basis of a civil RICO cause of action. 18 U.S.C. § 1961(5).

In this regard, as stated above, the required "pattern of racketeering activity" is statutorily defined as "at least two acts of racketeering activity . . . within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). However, in addition to alleging two or more predicate acts, a RICO Plaintiff must also show a relationship between those acts as well as a threat of continuing activity. H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) ("[T]o prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.") (emphasis in original) (internal citation and quotation marks omitted). Accord United States v. Payne, 591 F.3d 46, 64 (2d Cir. 2010); Fresh Meadows Food Servs., LLC, v. RB 175 Corp., 282 F. App'x 94, 97–98 (2d Cir. 2008).

Relatedness can be shown if the predicate acts share the same or similar purposes, results, participants, victims, or methods of commission or are otherwise so related as to not be isolated events. H.J. Inc. 492 U.S. at 240. "To meet this test the racketeering acts must be related both to

each other and to the enterprise." Payne, 591 F.3d at 64. The Second Circuit has labeled the requirement that the acts be related to each other as "horizontal relatedness" and the requirement that they be related to the enterprise as "vertical relatedness." United States v. Cain, 671 F.3d 271, 284 (2d Cir. 2012) cert. denied, 132 S. Ct. 1872, 182 L. Ed. 2d 655 (2012). Both horizontal and vertical relatedness are generally satisfied by a showing that each predicate act was carried out in furtherance of the enterprise or was only possible through the defendant's use of his or her position in the enterprise. Rosenson v. Mordowitz, No. 11 Civ. 6145(JPO), 2012 WL 3631308, at *5 (S.D.N.Y. Aug. 23, 2012).

Continuity can be shown as either "open-ended continuity" or "close-ended" continuity. H.J. Inc., 492 U.S. at 241. Open-ended continuity exists where a defendant's "predicate acts represent an ongoing way of conducting [the defendant's] business." Kalimantano GmbH v. Motion in Time, Inc., 12 Civ. 6969(PAE), 2013 WL 1499408, at *8 (S.D.N.Y. Apr. 12, 2013) (internal quotation marks and citations omitted). If the enterprise is primarily legitimate, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." Lefkowitz v. Bank of N.Y., No. 01 Civ. 6252(VM), 2003 WL 22480049, at *9 (S.D.N.Y. Oct. 31, 2003) (quoting Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 243 (2d Cir. 1999)) (internal quotation marks omitted).

On the other hand, "[c]losed-ended continuity is primarily a temporal concept[.]" Kalimantano, 2013 WL 1499408, at *14 (internal quotation marks, brackets and citations omitted). In this regard, "a plaintiff must provide some basis for a court to conclude that defendants' activities were neither isolated nor sporadic, and that defendants engaged in such activity for a substantial period of time." Marini v. Adamo, 812 F. Supp. 2d 243, 262 (E.D.N.Y.

13

2011) (internal quotation marks and citations omitted). Of importance, "[t]he Second Circuit has never held a period of less than two years to constitute a substantial period of time for purposes of closed-ended continuity." Kalimantoano, 2013 WL 1499408, at * 14 (citing DeFalco v. Bernas, 244 F.3d 286, 321 (2d Cir. 2001)) (internal quotation marks omitted); see also Marini, 812 F. Supp. 2d at 262. "Furthermore[,] "while closed ended continuity is primarily concerned with the time period of the activities, the court also considers factors such as the 'number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes' as relevant when determining whether closed ended continuity exists." Marini, 812 F. Supp. 2d at 262 (citing SKS Constructors, Inc. v. Drinkwine, 458 F.Supp.2d 68, 78 (E.D.N.Y.2006) (in turn, citing DeFalco, 244 F.3d at 321)); see also Kalimantano 2013 WL 1499408, at *14.

In this case, as explained in further detail below, the Court finds that (1) the Plaintiff has failed to state a viable RICO claim because the predicate acts of mail fraud and extortion were limited in time and nature and therefore did not exhibit a threat of continuing activity and that (2) the alleged acts of wire fraud were not pled with sufficient specificity to establish violations of the wire fraud statute.

**a. Relatedness**

Here, the alleged predicate acts of mail fraud, wire fraud and extortion committed by Coiro were only possible through Coiro's use of his position at Benerin, the owner of the Premises at issue. Coiro could only overcharge the Plaintiff for utilities and take meaningful steps to disrupt and destroy the Plaintiff's business by virtue of his position as president of Benerin. It was in this position and as part of the alleged schemes to overcharge the Plaintiff for utilities and disrupt and destroy the Plaintiff's business that Coiro allegedly committed the

14

predicate acts of mail fraud, wire fraud, and extortion. These alleged predicate acts are related to each other in that they share the same participants, victim and purpose. Further, they are related to the enterprise in that all of the acts were allegedly committed by Coiro in carrying out his position as President of Benerin. Therefore, the Court finds that the Plaintiff's Complaint satisfies the pleading requirement that the acts be related to each other and the enterprise. See H.J. Inc., 492 U.S. at 240; Payne, 591 F.3d at 64, Rosenson, 2012 WL 3631308, at *5.

**b. Continuity**

Although the Court finds that the Plaintiff has sufficiently pled that the alleged predicate acts were related to each other and the enterprise, the Plaintiff has nevertheless failed to allege either open-ended or close-ended continuity. As such, her RICO claims must be dismissed.

With respect to open-ended continuity, Benerin was a primarily legitimate business engaged in leasing units of the Property. Although Benerin may be an ongoing business, Plaintiff does not allege that the predicate acts were an ongoing way of conducting that business so as to imply a threat of continuing activity. First, the allegations in the Plaintiff's complaint do not indicate that the regular operations of Benerin involved the use of mail fraud or extortion nor imply a threat that these same acts will be committed in the future.

Similarly, the Plaintiff fails to assert that the alleged wire fraud constitutes a threat of continuing activity. The Plaintiff's claims indicate that the wire fraud was limited to the checks tendered by the Plaintiff for rent and utilities at the Premises. However, the Plaintiff has since left the Premises and stopped tendering payments. Furthermore, Smithaven Grooming, which now occupies the Premises, is owned and operated by Coiro himself. Therefore, the Plaintiff's factual allegations are insufficient to create a plausible inference that Coiro will continue to overcharge any other tenant for utilities. In addition, the Complaint does not suggest that the

15

Defendants will commit any future wire fraud because it does not suggest that any other tenant pays Benerin in the form of a check that will be cleared through the interstate banking system. Accordingly, the Court finds that the Plaintiff has failed to adequately plead that the alleged wire fraud constitutes a threat of continued criminal activity.

Instructive in this regard is the Second Circuit's decision in <u>Cofacredit, S.A. v. Windsor Plumbing Supply Co.</u>, 187 F.3d 229 (2d Cir. 1999). In <u>Cofacredit</u>, the plaintiff alleged that the defendant undertook a scheme to defraud the plaintiff, which included the use of the mail and wires. The Second Circuit found that the "inherently terminable scheme" did not imply a threat of ongoing activity. <u>Id.</u> at 244 (internal citation and quotation marks omitted). In reaching this conclusion, the Second Circuit noted that the defendant's business was primarily legitimate and that there was no evidence to suggest that the predicate acts of mail and wire fraud would extend beyond the termination of the scheme to defraud the plaintiff. <u>Id.</u>

Similarly, in this case, the alleged scheme to defraud the Plaintiff along with the scheme to destroy and disrupt the Plaintiff's business combine to create an "inherently terminable scheme." Thus, they do not pose a threat of continued criminal activity. As such, the Plaintiff has failed to allege open-ended continuity with regard to the mail fraud, extortion, and wire fraud claims.

The Court also finds that the Plaintiff fails to allege close-ended continuity because she has not sufficiently pled predicate acts spanning longer than two years. Preliminarily, while the Plaintiff only pleads with specificity four counts of mail fraud, these acts occurred during a period of less than two years. Therefore, the mail fraud claims alone are insufficient to state a claim of a pattern of predicate racketeering acts for a RICO action based on a close-ended continuity theory. Similarly, the Plaintiff's allegations of extortion span three dates in 2012.

16

Because the alleged acts of extortion and mail fraud do not span a period longer than two years, they cannot satisfy the Plaintiff's burden of alleging close-ended continuity. See Kalimantano 2013 WL 1499408, at *14 (citing DeFalco, 244 F.3d at 321 (2d Cir. 2001); Cofacredit S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999)) ("[T]he Second Circuit has never held a period of racketeering activity lasting less than two years to be substantial enough to qualify as closed-ended continuity.").

However, the Plaintiff further alleges approximately 84 counts of wire fraud over 84 months. Such allegations must be pled with the specificity required by Fed. R. Civ. P. 9(b). See First Capital, 385 F.3d at 178 (2d Cir. 2004). They must allege facts showing the date and time of each transaction as well as its fraudulent nature. See Am. Fed'n of State, Cnty. Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb & Co., No. 12 Civ. 2238(JPO), 2013 WL 2391999, at *5 (S.D.N.Y. June 3, 2013) (quoting Lerner, 459 F.3d at 290 (quoting Mills v. Molecular Power Corp., 12 F.3d 1170, 1175 (2d Cir. 1993))) ("To comply with [Fed. R. C. P.] 9(b), the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." (internal quotation marks and alterations omitted)).

The Plaintiff here does not plead specific dates and times of the alleged wire fraud. Nor does the Plaintiff allege that the bank transactions were themselves fraudulent and not more than incidental to the alleged fraud. See Gross v. Waywell, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009) (citing Ashland Oil, Inc. v. Arnett, 875 F.2d 1271, 1278 (7th Cir. 1989)) ("[E]ven in connection with an actual fraudulent scheme, there may be substantial innocent or incidental use of the mail or wires that may not relate to any unlawful activity of the enterprise or that involves no deception of the plaintiff."). Moreover, the Plaintiff fails to plead facts showing the use of

17

wires at all in the bank transactions.  She further fails to allege that the bank transactions involved more than intrastate activity.  See, e.g., Cofacredit, 187 F.3d at 243–44 (reversing the district court and finding that phone calls between two companies in Brooklyn were not necessarily interstate or international use of the wires).

In addition, wire fraud is defined by 18 U.S.C. § 1343 as a fraudulent transmission by means of wire communication in interstate or foreign commerce.  18 U.S.C. § 2510 defines a wire communication as "an aural transfer," which "means a transfer containing the human voice at any point between and including the point of origin and the point of reception[.]"  This Court therefore doubts that use of banking wires alone can constitute a wire communication for wire fraud pursuant to 18 U.S.C. § § 1343 and 2510.  See Id. ("[Wire communications] include [communications over] cellular phones, cordless phones, voice mail, and voice pagers, as well as the traditional landline telephones.")

The Court is aware of only one case on point in this matter.  The Ninth Circuit, in U.S. v. Jinian, 712 F.3d 1255, 1264 (9th Cir. 2013), upheld the clearing of fraudulently issued checks as wire fraud, after a showing at trial of the date, time, amount, and the out of state 'ping' to the federal reserve system over interstate wires involved in the transaction.  Nevertheless, the Plaintiff in this case has not pled any such particularity.  Although, the Supreme Court has noted that it is "conceivable" that the "mere clearing of a check, . . . alone, in some settings would be enough" to allege wire fraud, Kann v. United States, 323 U.S. 88, 95, 65 S. Ct. 148, 89 L. Ed. 88 (1944), this is not one of those settings.  Here, the use of interstate wires, if any, was subsequent to the fraud and only a technical and incidental step in obtaining the fruits of the alleged fraud.  The alleged fraud could just as easily have been committed without the use of the banking system had Coiro demanded or the Plaintiff offered to pay in cash or another equivalent.

18

For these reasons and pursuant to Fed. R. Civ. P. 9(b) and the requirements of 18 U.S.C. § 1343, the Plaintiff has failed to allege a pattern of racketeering activity, a necessary element in a RICO claim. Thus, the RICO claims against Coiro and Benerin must be dismissed.

As a final matter, while the Court, in its discretion, may grant a plaintiff who has failed to comply with Fed. R. Civ. P. 9(b) an opportunity to file an amended complaint, the Court declines to do so in this case. This is because, in the Court's view, even if the Plaintiff did comply with Fed. R. Civ. P. 9(b), for the reasons stated above, the Plaintiff's allegations still fail to satisfy other necessary elements of a RICO claim, including (1) that continuity requirement has been met; (2) that the use of banking wires constitutes a wire communication in order to establish the predicate act of wire fraud; and (3) that Benerin and Coiro's alleged acts affected interstate or foreign commerce. See Gee Chan Choi v. Jeong-Wha Kim, 04-CV-4693, 2006 WL 3535931, at *11 (E.D.N.Y. Dec. 7, 2006) (citations omitted) ("Although courts have the discretion to permit parties to amend their pleadings to correct initial pleading deficiencies, leave may be denied where repleading would be futile.") (citing Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986), and Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001)); Harrell v. Primedia, Inc., 02 CV 2893(JSM), 2003 WL 21804840, at *3 (S.D.N.Y. Aug. 6, 2003) ("Given the blatant defects in the Amended Complaint, there is no reason to believe that the [p]laintiffs could state a RICO claim were they given another chance."). See also Moss, 719 F.2d at 17.

**D. Pendent State Claims**

The Plaintiff's Complaint includes New York state law claims for misrepresentation, unjust enrichment, conversion, and fraud. The civil RICO claims formed the basis for federal jurisdiction in this case. Since, in this Decision and Order, the Court is dismissing the federal claims at this early stage of the case, it declines to exercise supplemental jurisdiction over the

pendent state law claims. See, e.g., United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Block v. First Blood Assoc., 988 F.2d 344, 351 (2d Cir. 1993); Moore v. Univ. of Vt., 973 F.2d 122, 127 (2d Cir. 1992); Mathon, 875 F. Supp. at 1002 (declining to exercise jurisdiction over pendent state statutory and common law claims after dismissing the civil RICO claims); Harrell, 2003 WL 21804840, at *3 (dismissing the plaintiff's Complaint where the "[p]laintiffs' RICO claims, which provide[d] the only basis for federal jurisdiction, [were] dismissed[,]" because "[t]here [was] no reason for the [c]ourt to exercise its discretion to retain jurisdiction over [p]laintiffs' state law claims").

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Plaintiff's RICO claims are dismissed with prejudice, and it is further

**ORDERED** that the Plaintiff's state law claims are dismissed without prejudice, and it is further

**ORDERED** that the clerk of the court is directed to close the case.

**SO ORDERED.**
Dated: Central Islip, New York
August 22, 2013

             _/s/ Arthur D. Spatt_
             ARTHUR D. SPATT
            United States District Judge